UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| RONALD MILLARD IRBY<br>    #98804 | CIVIL ACTION NO. 12-2302<br>SECTION P |
| VERSUS | JUDGE MINALDI |
| CALCASIEU PARISH<br>SHERIFF'S DEPARTMENT, ET AL | MAGISTRATE JUDGE KAY |

<u>REPORT AND RECOMMENDATION</u>

*Pro se* plaintiff Ronald Millard Irby, proceeding *in forma pauperis*, filed the instant civil rights complaint on August 31, 2012.  Doc. 1.  Plaintiff is currently incarcerated at Calcasieu Correctional Center (CCC), Lake Charles, Louisiana, and complains about events that occurred at that facility as well as the Calcasieu Sheriff's Prison (CSP), Lake Charles, Louisiana[1]. Plaintiff names the following as defendants: Calcasieu Parish Sheriff's Department (CPSD); Calcasieu Correctional Center; W.O. Moss Regional Hospital (Moss); Louisiana State University Health Service Center (LSU-HSC); Nurse Practitioner Carol Thornton; CSP Warden Daniel Burkhalter; CSP Assistant Warden H. Gregory Tete;, and, CSP Commander Victor Salvador.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.

<u>Background</u>

Plaintiff contends that he has been subjected to cruel and unusual punishment due to inadequate medical treatment provided by the above defendants.   More specifically, he

---

[1] On February 7, 2013, plaintiff filed an amended complaint [doc. 14] in which he dropped claims regarding food service, quality, quantity, and weight loss and dismissed the defendants associated with those claims, Inat Blacklidge, the kitchen manager, and Mid-States, Inc., the food service contractor.

complains that the defendants did not properly treat an infection in his left ear.  Plaintiff claims that the improper medical care extended over a ten month period of time, causing fluid build-up, ear drum swelling, and a ruptured ear drum.

In support of his claims, plaintiff attached copies of grievances and responses thereto. The first grievance in regard to left ear pain was filed on February 27, 2012.  Doc. 14, att. 1, p. 1. On that date, plaintiff claims that he has been complaining about ear pain since July 2011.  He states that defendant Thornton treated him with drops in August 2011, but the treatment did not work.  After using the drops for two weeks, plaintiff informed Thorton that he still had ear problems.  In October 2011, Thornton issued a different medication in an effort to dry up plaintiff's ear.  That treatment did not work either and plaintiff claims that Thornton told him that he needed to see an ENT.  However, Thornton did not schedule an appointment for plaintiff.

In January 2012 plaintiff was given more medication and, after three weeks, he states that treatment did not work.  Plaintiff states that on February 13, 2012, Thornton again told him that he needed to see an ENT.  On the date that he filed the ARP, February 27, 2012, plaintiff stated that his ear was still infected and hurt.

The response to the grievance from defendant Thornton dated March 28, 2012, noted that plaintiff had been treated for the ear infection on multiple occasions and had been given multiple antibiotics.  The response also stated that that an ENT referral had been requested.  Doc. 14. att. 1, p. 2.

Plaintiff filed a Step II grievance on April 4, 2012 wherein he notes that his ear problem has been ongoing since July 2011 and asks for steps to be taken right away.  Doc. 14, att, 1, p. 2.. The step two grievance response from CSP Warden H. Gregory Tete dated May 3, 2012, stated as follows:

> Carol Thornton is a representative of Moss Regional Hospital, the medical authority.  Moss Regional Hospital is part of the state charity system which is part of the LSU Health and Medicine system.  She made diagnosis and ordered different treatments.  She ordered an ENT appointment after it appeared your ear was not getting better.  Your appointment was decided by someone else outside of our control.   You just had your appointment via telemedicine and another treatment was ordered as well as a follow up visit in a few weeks.  Evidently, it is not an emergency.  You are receiving the same medical care as needed, as any other citizen that uses the charity system.

Doc. 14, att. 1, p. 3.

Plaintiff filed a Step III grievance where he continued to complain about seeing a nurse practitioner for nine months with no cure.  Doc. 14, att. 1, p. 3.  The third step response from Commander Vic Salvador was dated May 24, 2012.  Doc. 14, att. 1, p. 4.  Therein he notes that plaintiff waited to start the grievance process some seven months into his alleged illness.  He notes that this would tend to indicate that he was satisfied with the treatment he was receiving. He further notes that plaintiff's treatment appears to be ongoing with a specialist which addresses his complaint.  *Id.*

Plaintiff also provided the court with a letter from him dated July 11, 2012, in which he asks for confirmation that he has a follow-up appointment with an ENT.  The response noted that he did have an appointment and that it takes a longer time to schedule when a person is incarcerated.  Doc. 14, att. 1, p. 6.

Plaintiff also provided medical records from the ENT Clinic at the University Medical Center in Lafayette, Louisiana.  These records dated August 2, 2012, October 11, 2012, and December 18, 2012, show that plaintiff was seen by a doctor on the given dates, had audiometric evaluations, and was given medication.  Doc. 14, att. 1, pgs. 7-18.

Despite the above treatment, plaintiff maintains that his medical care was inadequate and that he now suffers from severe loss of hearing.   As relief, plaintiff seeks $2,000,000.00 in

monetary damages for violations of his constitutional rights.   He also seeks an individual judgment of $25,000.00 against defendant Carol Thornton.

<u>**Law and Analysis**</u>

### A.   *Frivolity Review*

Plaintiff has been granted leave to proceed *in forma pauperis* under 28 U.S.C. §1915. Under 28 U.S.C. §1915(e)(2)(B), a district court is directed to dismiss an action if the court determines that the action is frivolous or malicious or fails to state a claim on which relief may be granted.  *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).  A complaint is frivolous if it lacks an arguable basis in law or fact.  *Gonzalez v Wyatt*, 157 F.3d 1016, 1019 (5th Cir. 1998) citing *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997).  A complaint fails to state a claim upon which relief may be granted if it is clear the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief.  *Doe v. Dallas Independent School Dist.*, 153 F.3d 211, 215 (5th Cir. 1998).  When determining whether a complaint is frivolous or fails to states a claim upon which relief may be granted, the court must accept plaintiff's allegations as true.  *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1996) (frivolity); *Bradley,* at 1025 (failure to state a claim).

### B.   *42 U.S.C. §1983*

Section 1983 proscribes conduct by any person who, under the color of state law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States.  42 U.S.C. §1983.  Thus, an initial inquiry in a lawsuit filed under §1983 is whether plaintiff has alleged that his constitutional rights have been violated.  If no constitutional violation has been alleged, there is no cognizable claim under §1983.  In order to hold the defendants liable under 42 U.S.C. §1983, the plaintiff must allege facts to show (1) that a

constitutional right has been violated and (2) that the conduct complained of was committed by a person acting under color of state law, that is, that the defendant was a state actor.  *See Hessbrook v. Lennon*, 777 F.2d. 999, 1005 (5th Cir. 1985).

The court is convinced that plaintiff has presented the best case which could be presented by him under the circumstances, and that further amendment of the pleadings would serve no useful purpose.  Accepting all of plaintiff's allegations as true and giving plaintiff the benefit of every doubt, the court concludes, for the reasons stated hereinafter, that he has failed to state a claim for relief, that his claims are frivolous as a matter of law, and that his complaint should therefore be dismissed with prejudice.

### C.  Improper Parties

The court notes that several parties to this action do not have the capacity to be sued. Specifically, the Calcasieu Parish Sheriff's Department and the Calcasieu Correctional Center (CCC) are not proper parties to this suit.  Federal Rule of Civil Procedure 17(b)(3) provides that the "capacity to sue or be sued is determined … by the law of the state where the court is located."  Thus, Louisiana law governs whether the above entities have the capacity to be sued in this action.   Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person."  This term is defined by the Louisiana Civil Code as "... an entity to which the law attributes personality, such as a corporation or partnership."  La. Civ. Code Ann. art. 24.  In Louisiana, correctional centers are not legal entities capable of suing or being sued.  *See Robertson v Detention Center Claiborne Parish* 2009 WL 3241561 (W.D. La. 2009)("It is well established that a detention center is not a legal entity capable of being sued.")  In other words, the State of Louisiana has not granted juridical status to the CCC.

Likewise, the State of Louisiana grants no such legal status to any parish sheriff's office.

*Liberty Mutual Ins. Co. v. Grant Parish Sheriff's Dep't*, 350 So.2d 236 (La.Ct.App.1977), writ refused, 352 So.2d 235 (La.1977).  Thus, the Calcasieu Parish Sheriff's Department is not a juridical person capable of being sued under § 1983.  Plaintiff's suit against these non-juridical entities fails to state a claim upon which relief can be granted.

Plaintiff has also sued the Louisiana State University Health Service Center and W.O. Moss Regional Hospital.  The Louisiana State University Health Service Center is an arm of the State of Louisiana and as such, is entitled to the protections of the Eleventh Amendment, which bars a federal court from "entertain[ing] a suit brought by a citizen against his own State." *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98 (1984) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)); *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 185-86 (5th Cir.1986).  Accordingly, it is immune from liability under § 1983.  Likewise, plaintiff's medical care claim against W.O. Moss Regional Hospital, a part of the LSU Health Service system must also fail on the basis of sovereign immunity

### D.  Supervisor Liability

The court specifically notes that to the extent that plaintiff names CSP Warden Daniel Burkhalter, CSP Assistant Warden Greg Tete, and CSP Commander Victor Salvador in supervisory capacities, such claims are not cognizable.  It is well settled that supervisory officials may not be held liable under §1983 under the doctrine of *respondeat superior*.  *See Mouille v. City of Live Oak*, 977 F.2d 924 (5th Cir. 1992), *cert. denied*, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993).  To be liable under §1983, supervisory officials must be personally involved in the act causing the alleged constitutional deprivation, or must have implemented a policy so deficient that the policy itself acts as a deprivation of constitutional rights.  *Id.*

Here, plaintiff fails to set forth a constitutional claim against these parties.  There are no allegations that they were personally implicated in any alleged constitutional deprivation or that they implemented any policy which acts as a constitutional deprivation.  Thus, these claims should be dismissed for failure to state a claim upon which relief may be granted.

### E.  Medical Care Claims

Plaintiff claims that the defendants were deliberately indifferent to his medical needs.  As shown above, plaintiff's claims against all of the defendants, except possibly nurse practitioner Carol Thornton, are subject to dismissal.  Further, it is unclear whether or not nurse Thornton is a state actor.  However, even assuming that she is a state actor and that all of the defendants named by plaintiff were proper parties to this action, plaintiff has failed to state a claim upon which relief can be granted.

Medical care claims asserted by convicted prisoners, like plaintiff, are analyzed under the Eighth Amendment.  In order to succeed on a medical care claim such as plaintiff's he must establish the defendants, in each instance, were deliberately indifferent to his serious medical condition.  It is only this deliberate indifference, "an unnecessary and wanton infliction of pain repugnant to the conscience of mankind," that constitutes conduct proscribed by the Eighth Amendment.  *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997).

Deliberate indifference in the context of the failure to provide reasonable medical care to a convicted prisoner means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur.  *Thompson v. Upshur County, Texas*, 245 F.3d 447, 458-59 (5th Cir. 2001).  "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient

to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001).  Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459.

In *Woodall v. Foti*, 648 F.2d. 268, 272 (5th Cir. 1981), the Fifth Circuit Court of Appeals stated that the test in balancing the needs of the prisoner versus the needs of the penal institution is one of medical necessity, not of desirability.  The fact that a plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act.  Prisoners are not constitutionally entitled to the best medical care that money can buy. *See Mayweather v. Foti*, 958 F.2d. 91 (5th Cir. 1992).  A plaintiff's disagreement with the course of treatment offered by the medical staff does not establish that a constitutional violation has occurred.  *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *Mayweather, supra.* Merely alleging a prison doctor should have undertaken additional diagnostic measures or utilized an alternative method of treatment does not elevate a claim to constitutional dimension. *See*, *Spears, supra* (A disagreement with a doctor over the method and result of medical treatment does not require a finding of deliberate indifference).  Furthermore, the fact that plaintiff continues to suffer from pain is insufficient to establish that a constitutional violation has occurred.  *Mayweather, supra.*

In the instant case, the information contained in plaintiff's original complaint, amended complaint, and exhibits shows that plaintiff received substantial medical treatment, including numerous visits with a nurse practitioner, various medications, doctors' visits at outside medical facilities, and medical testing done at outside medical facilities.  Plaintiff's allegations, at most, state a disagreement amongst him and the medical staff regarding the procedures to treat his

medical problems.  As previously stated, claims such as those made by plaintiff are insufficient to establish that a constitutional violation has occurred.

Absent a constitutional violation, federal courts are generally reluctant to interfere in the internal affairs of a prison.  *See Shaw v. Murphy*, 532 U. S. 223 (2001).  The decision regarding plaintiff's treatment is best left to the prison officials.  The facts presented here clearly do not demonstrate that the defendants refused to treat plaintiff, ignored his complaints, or intentionally treated him incorrectly.  The evidence before the court simply does not support a finding of deliberate indifference.  Accordingly, this court finds that plaintiff's medical care claims should be dismissed as frivolous and for failing to state a claim upon which relief can be granted.

## Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that  plaintiff's civil rights complaint be **DENIED AND DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim upon which relief can be granted in accordance with 28 U.S.C.1915A(b)(1) and 28  U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal**

conclusions accepted by the District Court, except upon grounds of plain error. See *Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

THUS DONE this 9th day of April, 2013.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE